LEON BLUM ET AL. v. JOHN T. RICKS.

A bankrupt may plead his discharge in bankruptcy in bar of an action
against him by a creditor whose debt had not been scheduled, and who
had not been served with notice from the bankrupt court.

APPEAL from Travis. Tried below before the Hon.
J. P. Richardson.

This was a suit for debt brought by Leon & H. Blum
against Ricks and one Banks, as partners. There was
judgment against Banks, but that judgment was not be-
fore this court.

Ricks pleaded his discharge in bankruptcy.

L. & H. Blum replied in substance that Ricks had not
scheduled them among his creditors; that no notice what-
ever of his bankruptcy proceedings had ever been given
or sent them, as required by law; that they never had
any notice or knowledge that he had become a bankrupt
until after the institution of this suit, and long after he
had obtained the discharge pleaded by him; that they,
of course, had never proved up their debt against his es-
tate or assignee, and therefore did not and could not have
opposed his discharge by the bankrupt court; and that
his omission of their claim from his schedule of creditors
was a fraud and concealment, and by reason thereof his

discharge in bankruptcy did not bar or preclude them of their suit and recovery.

The case was submitted to the judge, without a jury. Judgment for Ricks, on the ground that his discharge was a good defense against the Blums.

L. & H. Blum gave notice of appeal, and assigned for error that under the pleadings and evidence the court below erred in holding the discharge a bar to their suit.

The opinion, it will be seen, directs the publication of the arguments.

*A. M. Jackson*, for appellants.—I am not seeking to set aside and annul the discharge of the appellee. That, of course, could only be done in the bankrupt court, under Section 34 of the bankrupt law. But I deny that, so far as concerns a creditor never scheduled as such by a voluntary bankrupt, and never notified as required by Section 11, a discharge issued to him by the bankrupt court has ever been "duly granted," so as to release him, under Section 34, from the claim of such ommitted creditor. Ricks' discharge may be a very good discharge as against creditors who were scheduled or notified. It is not, therefore, the validity of the discharge, but the "extent of its operation," which is the question I present. This latter question never was before the bankrupt court; it is a question which can only arise in that court in which the discharge is pleaded as a defense. (*In re* Kimball, 2 Bankrupt Register, 74; *In re* Rosenberg, 2 B. R., 81 ; *In re* Wright, 2 B. R., 57, or 36 Howard's Practice Reports, 167, or 2 Benedict's Rep., 509.) These cases show that whether a discharge constitutes a defense to the particular claim sued upon is a question never adjudicated by the bankrupt court which granted the discharge, and so far as I know, these decisions have never been overruled. They are decisions of the very courts charged

8

with the administration of the bankrupt law, and when those courts thus expressly disclaim the power to decide that the discharge which one of them issued to Ricks is a good defense against the claim of the appellants, it would seem to be preposterous for the State court trying the appellants' suit to plant itself upon the naked language of the discharge, and to hold that its issuance is an adjudication against the appellants.

I am apprised that this identical question has been passed upon by a few of the courts in some of the States, and that in the majority of the cases the decision has been adverse to the ground I take. But I submit that such decisions, however respectable those courts may be, have no obligatory claim for deference by this court; and even if this court has itself announced a similar decision (as I am told it has), yet the question can hardly be called a settled one, and its importance warrants a reconsideration of it.

The cases of Barnes v. Moore, 2 B. R., 174; Perkins v. Gay, 13 B. R., 189; Beardsley v. Hall, 36 Conn., 270, are cases directly supporting the position I maintain; and there are two anonymous cases to the same effect reported in 6 Internal Revenue Record, 149, and Supplement to Bankrupt Register, 27. (Also see 22 Mich. R., 475, to same point.) The cases *contra* may be somewhat more numerous, but none of them are by tribunals to which this court need defer.

On further examination I believe this is not so. The only cases to the contrary of my position, so far as I have seen, are Symonds v. Barnes, 6 B. R., 377; and Payne v. Able, 4 B. R., 67.

In this attitude of the question, it should be considered independent of precedents, and solely upon principle and upon the provisions of the bankrupt law itself.

Looking first to the bankrupt law, it seems to me that

nothing can be clearer than that a discharge which has not been "duly granted" can have no effect upon the debts of a bankrupt. Such is substantially the language of the 34th Section of the law itself, by which the effect of the discharge is defined. As to some creditors a discharge may have been "duly granted," while as to others it may not have been. In such case it is operative on the claims of the former, but not upon those of the latter. But whether any particular creditor is barred by a discharge is, as I have shown, a question of which the bankrupt court takes no jurisdiction. It does not even pretend to determine that question, but leaves it to be adjudicated in the ordinary *nisi prius* courts, to which the creditor may still resort. When the creditor resorts to a *nisi prius* court, the defendant must plead his discharge; and then the plaintiff surely may show cause why, as to him, that discharge is no defense. For instance, he may show that his debt was a fiduciary debt, or he may show any other matter which it is still competent for the court to inquire into. And this results from the provisions of the bankrupt law itself. True, there are certain matters which the *nisi prius* court could not adjudicate, and which, therefore, it would not inquire into. For instance, if the creditor should allege any of the matters specified by Section 29 of the bankrupt law as causes why a discharge should be refused, then the *nisi prius* court will not entertain such matter; for they are matters for the bankrupt court alone. But it is competent for the creditor to show other and different causes than those specified by Section 29; and all the cases concur in this.

Now, the cause assigned by the present plaintiffs is, that they were not scheduled by the defendant among his creditors, nor notified as required by the bankrupt law. But that is not one of the matters specified by Section 29. Therefore, if cognizable by any court, it must be cogniza-

ble by the *nisi prius* court, and not by the bankrupt court. But the cases adverse to my present position do not stop at this rational conclusion, but go further and require additional matter. They say that the creditor must allege that the omission to schedule and notify him was fraudulent on the part of the defendant. Now, this is utterly inconsistent with the admitted principle that no matters specified in Section 29 can be entertained by the *nisi prius* courts ; because it is obvious that a fraudulent omission to schedule a creditor would clearly come with- in the scope of both the first and the last of the matters specified in Section 29. These adverse decisions, there- fore, tested by the very principles they profess to follow, must necessarily be erroneous.

The only possible ground upon which such cases can be sustained is, that an accidental or mistaken omission to schedule and notify a creditor is an immaterial averment, that it is of no legal significance or consequence, and that the creditor accidentally omitted and left in ignorance of the bankruptcy proceedings is as much affected by the discharge as those creditors who were scheduled and no- tified.

Now, I ask if that position can be maintained ? What is a discharge in bankruptcy ? It is, says Bump, "an ad- judication upon proceedings of which all parties inter- ested should have all the notice which the law provides for them" (citing 43 Vermont, 662). But Mr. Bump, im- mediately after giving this very correct idea of a dis- charge, proceeds at once to put a most illogical limita- tion upon the obvious consequences of such an "adjudi- cation," by adding that when a "bankrupt fraudulently deprives them" (*i. e.*, creditors) "of all direct notice that the law entitles them to, and proceeds to judgment with- out such notice to them, the judgment, such as it is, al- though it may be valid as to all persons who had notice,

is void as to those who did not," etc.   (See Bump's notes on Section 34, p. 527 of his 6th Edition.)   That is certainly correct as far as it goes; but it suggests a great error by interposing the qualifying word "fraudulently." Why not "accidentally" as well as "fraudulently"? What is the reason, and the only possible reason, why the adjudication can be void as to any creditor?   It must be a defect in the jurisdiction of the court making the adjudication, in so far, at the least, as the adjudication relates to the creditor who impeaches it.   Nothing short of that will sustain the conclusion.   Fraud in procuring a judgment does not make the judgment void.   It only makes it voidable.   A want of jurisdiction which results from a plaintiff's fraudulent acts or concealment, is certainly a fatal objection to a judgment; but is it a particle more fatal than a want of jurisdiction which results from any other cause?

On what other legal question or occasion has it ever been attempted to make the motive or animus of a party the test of the authority of a court to render a judgment? What relation can possibly exist between the animus of a suitor and the jurisdiction of a court?   Take the following supposition:   Both Smith and Jones, creditors of bankrupt Robinson, were omitted from the schedules of the latter, and in consequence of the omission, no notice of the bankruptcy proceeding was mailed to either of them.   But Robinson fraudulently omitted Smith's name, while it was only by mistake or forgetfulness that he omitted Jones'.   Legal deduction from these facts, viz. : the bankrupt court had jurisdiction over Jones and his claim, but no jurisdiction over Smith and his!   What more childish *non-sequitur* can be imagined than that?

What is there in the bankrupt law to lend countenance to such a doctrine?   On the contrary, when all its provisions are kept in view, nothing, it seems to me, can be

more certain than the fallacy of such doctrine. With the utmost care and particularity it specifies every step necessary to be taken by the bankrupt and by every official of the bankrupt court, before any discharge can be duly granted. It enables the bankrupt to bring a single suit against all his creditors, and to adjudge them to accept his assets in full satisfaction of all he may owe them. But the proceeding it gives him is neither a *star*-chamber nor an *ex parte* proceeding. He is required to file a petition, accompanied with certain schedules, upon one of which he must designate the creditors who are to become parties to his suit. On that as a basis, further steps are made necessary, to the end that those creditors may be apprised of the suit brought against them. A warrant issues to the marshal, authorizing him to publish notice in the newspapers, and also to mail notices to each of the creditors; and then the law proceeds carefully to prescribe what such notices must contain. (See Section 11.)

This is all the notice the creditors are entitled to receive. This is the citation by which they are made defendants to the suit against them. The personal service of this citation consists in the mailing of the notices to each of the creditors designated by the bankrupt in his schedule. Now, upon what legal principle can that service be omitted, or the want of it be dispensed with? What is there in the nature of a bankruptcy proceeding, or in the constitution of a bankrupt court, or in the provisions of the bankrupt law, to warrant or countenance the omission of it? In Bump's notes on the 34th Section, citing *In re* Penn, 3 Bankrupt Register, 145 (or 4 Benedict, 99), it is said: "A discharge granted without jurisdiction is void; for by this section it is only a discharge duly granted which is of any avail. A discharge granted without jurisdiction to grant it is not duly granted, and is no discharge." And in the same connection, citing Day v.

Bardwell, 3 B. R., 115 (or 97 Mass., 246), it is said : "Every bankrupt or insolvent system in the world must partake of the character of a judicial investigation. Parties whose rights are to be affected are entitled to a hearing. Hence every system professes to summon the creditors before some tribunal to show cause against granting a discharge to the bankrupt."

These principles are too familiar to this court and have been too often and ably enforced by its own decisions to require a labored vindication of them by argument or by authority. Applying them to the present case, it will be seen by reference to the eighteenth page of the transcript that the court below held that Ricks' discharge released him from the appellants' claim, notwithstanding the admitted fact that they had not been scheduled or notified as creditors, and had no actual notice of the bankruptcy proceedings.

This is nothing more nor less than deciding that no service is necessary in order to make creditors parties defendant to a suit against them in bankruptcy. The only ground on which this anomalous doctrine is asserted is that the want of service did not result from an actual fraudulent design of the bankrupt. However true this might be, how can it tend to supply or dispense with the service made by the law a necessary prerequisite to the due granting of a discharge ? Would such a pretense cure a want of service in any other conceivable case or court ? In short, is not the judgment of a bankrupt court amenable to the universal principle lying at the foundation of all judicial proceedings that it is a judgment conclusive only upon parties or privies ? If so, this judgment must be reversed.

*Chandler, Carleton & Robertson*, for appellee.—There are two questions presented in this case; viz. :

1. Was the appellee, John T. Ricks, a partner of G. H. Banks, under the firm name of "G. H. Banks," on September 3, 1867, as alleged in the petition of appellants, and is he liable as such for the value of the goods sued for?

2. And if said appellee was liable for said claim as a partner of said Banks, as appellants allege, then was he forever discharged therefrom by the United States District Court at Austin, by his discharge in bankruptcy, dated September 24, 1868, upon his petition filed in said court February 15, 1868?

The case was submitted to the judge without a jury, and the court found substantially, first, that appellee was a partner of G. H. Banks; and, second, that he was forever discharged from the claim sued on by his discharge in bankruptcy, as pleaded and proved.

We deem it entirely unnecessary to answer all the points presented in the very able argument of appellants' counsel, as the only question in the case is *res adjudicata* in this court.

The debt was contracted September 3, 1867. It existed therefore at the date of filing the petition to be adjudged a bankrupt, to-wit, February 15, 1868. It was a debt provable under the act of Congress. The discharge in bankruptcy is therefore a complete bar to the suit of appellants in the State courts, and its validity, or the "extent of its operation," can only be called in question in the United States court where the discharge was granted. This court, nor the State district court, cannot inquire into the regularity of the proceedings in bankruptcy. The provisions of the act of Congress are ample to protect the creditor against any fraudulent act upon the part of the bankrupt, and a complete remedy is there provided by allowing him to oppose the discharge before granted, or to have it set aside or annulled within two years after

granted.   It was the intention of the law-makers to clothe the Federal courts with exclusive jurisdiction of all questions affecting the bankrupt or his estate.   This rule has been so universally adhered to that it is needless to cite cases, especially when this court twice during the present term has passed upon this identical question.

See Alston v. Robinet, No. 813, from Walker county, and Taylor v. Bonner, No. 1196, from Anderson county, decided at this term.

We refer further to the following cases sustaining the same general doctrine:   Cory v. Ripley, 57 Maine, 69; Parker v. Atwood, 51 N. H.; Oates v. Parish, 47 Ala.; Beardsley v. Hall, 36 Conn., 270; Ocean National Bank v. Alcott, 46 N. Y., 12; Payne v. Able, 7 Bush, Ky., 344; Fox v. Weed, 21 La. An., 58: *In re* Dupree, 6 Bankrupt Reports, 89; *In re* Charles K. Herrick, 7 B. R. 341.

Appellants raised the issue of fraud in the amended petition or replication, but offered no proof of the fact further than the omission of appellants' names from his schedules.

Appellee relied, first, on his discharge; second, upon his own testimony; third, upon the testimony of Fred. Carleton, the attorney who filed his schedules, and who advised him in regard to this very claim.   The testimony fully explains the reasons why appellants' names were omitted, and negatives every presumption of even color of fraud.

The question raised by counsel as to what is the process of the court by which the creditor is brought into court, we will not discuss further than to say that the notice mailed to the creditor is no more a service of the process than the publication of the notice in the newspaper specified in the warrant.   The warrant is the leading process. (Sec. 11, Bankrupt Act; *In re* Hall, 2 Bank. Reg., 68;

*In re* J. H. Robinson, Bank. Reg. Sup., 2 ; *In re* Pulver,. Bank. Reg. Sup., 11.)

But it appears like a presumption of a want of information upon the part of this learned court to further discuss a question that has received so clear and correct an elucidation at its hands.

We therefore submit the case, confident that it will be affirmed.

WALKER, J.—This record presents but a single question for our decision. Can a bankrupt plead his discharge in bar of the action of a creditor whose debt has not been scheduled, and who has not been served by notice from the bankrupt court? The briefs in this case are so able and so candid, containing a full list of authorities up to the time of their filing, that we do not deem it important or necessary to discuss the case. There are respectable authorities which give to the State courts the right to adjudicate this question, and maintain that the discharge cannot be plead against a creditor who stands in this position. But we have no doubt the strong current of authorities runs the other way, and we ourselves have virtually decided the question, taking sides with a greater number of authorities.

Many reasons might be urged *pro* and *con*, as they have been in this case by counsel. The briefs will be published with the opinion.

The judgment of the District Court is affirmed.

AFFIRMED.